IN THE DISTRICT COURT OF THE UNITED STATES FOR THE

MIDDLE DISTRICT OF ALABAMA, SOUTHERN DIVISION

| | | |
|---|---|---|
| IVAN "KEITH" GRAY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | CIVIL ACTION NO. |
| v. | ) | 1:14cv592-MHT |
| | ) | (WO) |
| CITY OF DOTHAN, | ) | |
| | ) | |
| Defendant. | ) | |

OPINION AND ORDER

Plaintiff Ivan "Keith" Gray, a former captain of the Dothan Police Department, brought this action against defendant the City of Dothan, Alabama, claiming that the City had discriminated against him on the basis of race, retaliated against him for challenging that discrimination, and violated a consent decree prohibiting race discrimination. After being informed that the parties had signed a written settlement agreement, which included a confidentiality agreement and a release, the court entered a judgment dismissing the case. Gray then filed a stipulation of dismissal.

The case is now before the court on Gray's motions to clarify, to set aside the judgment of dismissal and reinstate the case, and for a status update and an order to dissolve the confidentiality agreement and release.  Gray originally filed these motions pro se, and his original attorneys were permitted to withdraw, but he is now represented by new counsel.  An evidentiary hearing was held on all three motions on June 30, 2016, at which the court heard testimony from Gray, Gray's brother, and Gray's attorneys, Sonya Edwards and Jeffrey Bennitt.

## A.

If the parties to a lawsuit reach a settlement agreement and voluntarily dismiss the lawsuit, but a subsequent dispute over the settlement arises, the court has the authority to adjudicate the matter only if the prior dismissal order expressly retained jurisdiction to do so, or "unless there is some independent basis for federal jurisdiction."  <u>Kokkonen</u>

v. Guardian Life Ins. Co., 511 U.S. 375, 381-82 (1994).
Here, the court's prior judgment dismissing the case
expressly retained jurisdiction over the settlement as
well as granted "leave to any party to file, within 49
days, a motion to have the dismissal set aside and the
case reinstated or the settlement enforced, should the
settlement not be consummated."  Judgment (doc. no. 68)
at 1.

Now, since a settlement dispute has arisen, the
court will grant Gray's motion to set aside the
judgment and reinstate the case to the extent that the
court can adjudicate whether the parties have a
settlement agreement that should be enforced.  See
Stoudmire v. U.S. Xpress, Inc., 2013 WL 1363484, at *2
(M.D. Ala. Apr. 3, 2013) (Thompson, J.).  However,
based on the evidence presented, the court will uphold
and enforce the settlement and, pursuant to that
settlement, dismiss the case again, albeit this time
unconditionally, that is, with prejudice, without

3

retaining jurisdiction, and without leave to have the dismissal set aside under certain express conditions.

                              B.

     "Settlement agreements are contracts, and, like other contracts, once a party has manifested assent to an agreement that meets all requirements for a legally binding contract, the party is bound.   Therefore, unless he shows some reason why the agreement is invalid, he is bound by it."   Stoudmire, 2013 WL 1363484, at *3 (citations omitted).[1]

---

     1.  Although federal courts ordinarily apply the contract law of the forum State in assessing whether a settlement agreement is enforceable, federal courts have sometimes "enforced oral settlement of federal claims under principles of federal common law." Hogan v. Allstate Beverage Co., Inc., 821 F. Supp. 2d 1274, 1279 (M.D. Ala. 2011) (Thompson, J.).  This is because federal common law allows for the enforcement of unwritten settlement agreements, but the law of some States, including Alabama, does not.  See Jowers v. Ala. Bd. of Pardons & Paroles, 2013 WL 424726, at *1 (M.D. Ala. Feb. 4, 2013) (Thompson, J.).  Here, because the settlement agreement was written and signed--both in short form during the mediation and in long form a few days later--the choice of which law to apply is immaterial.

In his motions and at the hearing, Gray has identified what are essentially three grounds that he believes render the settlement agreement unenforceable. Even accepting Gray's description of the events surrounding the settlement as true, each of his arguments is unavailing.

## C.

Before addressing them, however, the court will recount the salient portions of his testimony.  At the hearing on Gray's motions, he stated as follows:

Gray and his attorneys, Edwards and Bennitt, attended a settlement conference with Judge Walker on June 18, 2015.  After some hours of mediation, late in the afternoon, Gray and Edwards were in a witness room and discussed whether "the mediation was going according to what we wanted and ... the monetary amount and the compensation was where we wanted"; he "decided, no, that it wasn't," and he "conferred with [Edwards] and asked her opinion about it, and she said that she

5

didn't think that we were where we should be as well."
Then, Gray stated, "I made the decision to stop and
tell her, 'Let's go.  I'm done.  Let's go.'  And she
said--her reply was, 'I'm a gambler.'  And she gave me
a hug and we went back into the courtroom with Judge
Walker."  Hr'g Tr. (doc. no. 97) at 10.

Gray and Edwards went to speak with Judge Walker in
her courtroom.  Edwards said, "I'm sorry, Judge.  We're
not going to be able to come to an agreement," and
extended her hand, but Judge Walker did not shake it.
Hr'g Tr. at 11.  Gray did not remember Judge Walker's
exact words, but recalled that she said, "sternly,"
"something to the fact of wasting the Court's time" and
asked multiple times when he had decided that his
"bottom line was going to be $ 200,000."[2]  Hr'g Tr. at

---

2.  The record is unclear as to the import of this
figure.  According to Gray, he had already made a
counteroffer below that amount.  Edwards does not
recall any reference to that specific figure, but does
remember Gray raising, rather than lowering, the amount
of money he was requesting, and Judge Walker saying
"something to [the] effect" of "if you're going
(continued...)

12.  Gray initially "didn't say a thing" in response to her questions, but Edwards eventually "tried to explain how [they] came to the figures [they] were at," and Gray explained that he sought adequate compensation for the loss of his health insurance.  Hr'g Tr. at 13-14.

Then, Judge Walker left the courtroom to take a personal call, and Gray told Edwards that he "did not mean to upset the judge," and then said to her, twice, "If we just have to take the settlement, go ahead and take it."  When Judge Walker returned, Gray apologized for upsetting her.  Hr'g Tr. at 15-16.  She reminded him that the City had said it would seek reimbursement of attorneys' fees in the amount of $ 700,000 should the case go to trial; Bennitt opined that paying that amount would "financially cripple" Gray; and Judge Walker clarified that the amount would be "$ 717,000, to be exact."  Hr'g Tr. at 19.  There was no further discussion of the City's attorneys' fees, but the

---

backwards, we're not going to get there today."  Hr'g Tr. at 73.

7

possibility of having to pay them factored significantly into Gray's decision to accept the settlement.[3]   Gray also recalls Edwards's suggestion at some point (he did not remember the precise timing of this statement) that if he proceeded to trial, he would be "drug through the mud."  Hr'g Tr. at 21.

Gray described feeling "taken aback," "like ... we couldn't leave," and "nauseous."  Hr'g Tr. at 17-18. Apparently, he worried about being "held in contempt of court."  Hr'g Tr. at 22.  However, Gray acknowledged that he was never threatened with contempt of court or any other sanction, or told that he could not leave the

---

3. Edwards offered unrebutted and credible testimony that she "advised him there's a remote possibility that you could have fees awarded against you," and that "it is a risk that's out there" if his case were "deemed not meritorious," because she "felt that we had a professional responsibility to advise Mr. Gray of that in his consideration of the settlement." Hr'g Tr. at 79.   Although Gray contends that this consideration weighed heavily in his decision to settle the case, he did not mention it in his subsequent communication with his attorneys.

mediation.[4]   Although  Gray  admitted  that  he  had  not
verbally  informed  his  attorneys  that  he  felt
intimidated,  he  believed  that  Edwards  should  have
inferred  as  much  from  his  demeanor  and  "eye  contact."[5]
Hr'g Tr. at 58.

After  further  negotiations  between  the  attorneys
for  both  sides,  in  which  Gray  agrees  that  he
participated,  an  agreement  was  reached.   Its  primary
terms  were  memorialized  in  a  handwritten  document,
which  Gray  signed  in  the  presence  of  the  City  officials

---

4.   Edwards  offered  credible  testimony  that  she  had
explained  the  mediation  process,  and  his  freedom  to
"decide  whether  to  accept  or  reject  settlement  offers,"
to  Gray  in  advance  of  the  conference.   Hr'g  Tr.  at
62-63.   She  credibly  testified  that  she  "explained  to
Mr.  Gray  before  and  during  the  mediation  that  he  did
not  have  to  accept  anything  the  city  offered,  and  that
he  could  walk."   Hr'g  Tr.  at  65.   Gray's  counsel
credibly  stated  at  the  hearing  that  he  had  received  his
"Miranda  rights"  regarding  his  freedom  not  to  settle  at
the  beginning  of  the  mediation.   Hr'g  Tr.  at  125.

5.   Edwards  recalls  telling  Gray  at  this  juncture,
"Perhaps  what  you're  sensing  is  frustration  with  the
fact  that  we're  not--we  don't  appear  to  be  mediating  in
good  faith  toward  a  resolution  when  we're  going
backwards  on  our  offers  instead  of  trying  to  come  to  a
mutual  compromise."   Hr'g  Tr.  at  78.

and attorneys.  Edwards and counsel for the City then communicated the final settlement to Judge Walker, while Gray sat with Bennitt in the witness room.[6]

The next day, Gray read in a local newspaper, the Dothan Eagle, comments made by two City commissioners regarding the settlement.  Although he could not "remember the specifics," he believes that the comments "were regarding how they thought that they would have won, but opted--some of them opted to pay it to minimize costs, something along those lines."  Hr'g Tr. at 51-52.

Gray left town that day.  That night, Gray sent Edwards an email in which he stated, in the midst of a message expressing appreciation for her assistance with his case: "I was under the impression that I could withdraw [from mediation] without any obligation to

_____

6.  Gray stated that Bennitt told him, "You might not feel good about it right now, but you'll feel good about it when you cash the check."  Hr'g Tr. at 25. Edwards remembers that Gray "seemed tired and ready to have it over with ... [and] relieved to have some closure ... to me, as we were leaving."  Hr'g Tr. at 83.

accept settlement.  Well, I didn't feel that the judge had the same understanding.  After voicing our want to withdraw, I definitely felt intimidated and pressured by the judge when she began questioning if I had wasted her time over and over again."  Hr'g Tr. at 56.  The next morning, he texted Edwards to ask what he described as a "hypothetical question": "If I felt intimidated/pressured, compelled by the Court to settle during mediation, is there any recourse in reversing prior to the official paperwork [meaning the long-form release] being signed?"  Hr'g Tr. at 44.  (Gray did not testify as to Edwards's response; Edwards stated that she "could only give him my professional opinion, that I didn't believe that Judge Walker coerced or intimidated him into any settlement."  Hr'g Tr. at 85.)

Gray received the long-form release by email, reviewed it over the phone with Edwards and asked her questions about some of its terms.  After he agreed to all of them, Judge Walker held a telephone conference on the record, during which counsel for both sides

11

stated to Judge Walker that they had authority to bind
their clients and reported that a full and final
settlement of the case had been reached. The next day,
Gray signed the long-form release and faxed it back to
Edwards.[7]

Later that month, after reading this court's
opinion on the City's summary-judgment motions, Gray
texted Edwards to say that the opinion was "good" and
to suggest that "we could have made more money." Hr'g
Tr. at 45. Gray then met with his attorneys and
expressed his displeasure with the settlement, saying
that he received "no justice." Hr'g Tr. at 35. He
also learned that the urgency regarding the signing of
the long-form release had been due to the Mayor of
Dothan's travel plans, not Judge Walker's. Gray asked
his attorneys about the possibility of seeking to set

---

7. Gray testified that Edwards called him and told
him that "Judge Walker was going to be out of town for
the weekend and needed to have that signed before she
left." Hr'g Tr. at 32. Edwards recalled telling Gray
instead that it was a City official who was going out
of town.

aside the settlement agreement, and they informed him that it would be a conflict of interest for them to represent him in doing so.  He refused to accept the checks his attorneys attempted to give him, and now seeks to have the court set aside the settlement agreement and reinstate the case for trial.

### D.

### 1.

First, Gray contends that the settlement has not yet been "consummated" because he has refused to accept or cash the settlement checks tendered by the defendants to his attorneys.  (During the pendency of these motions, the funds at issue have been deposited with the clerk of the court.)  Gray believes that, pursuant to the terms of the judgment, his own refusal to accept payment entitles him to void the settlement agreement and thereby avoid his waiver of claims.

Elementary contract law reveals why this is wrong: the settlement agreement in this case was a bilateral

13

contract (one accepted by giving a promise rather than by performing an act), in which Gray promised not to proceed on his claims against the City in exchange for the City's promise to pay him. (There were, of course, additional terms--other promises--not relevant here.) An offer to pay a monetary amount was made, and Gray accepted it, in the manner requested by the City, by giving as consideration (that is, in exchange) his promise to dismiss the case. At that point, both parties were bound. See Pezold Air Charters v. Phoenix Corp., 192 F.R.D. 721, 725 (M.D. Fla. 2000) (Sharp, J.). ("With a bilateral contract such as the one in this case, acceptance is the last act necessary to complete the contract. An acceptance is 'a manifestation of assent to the terms thereof made by the offeree in a manner invited or required by the offer.' Restatement (Second) of Contracts § 50 (1979).").

The court retained jurisdiction to enforce the settlement or allow the claims to proceed to trial in

14

case one party was aggrieved by the <u>other</u> party's breach of the agreement.  What the court did not issue--indeed, what it would have been without the authority to enter--is a judgment granting either party the option to withdraw unilaterally from an already-binding settlement agreement by refusing to accept the other party's performance.

2.

Second, Gray argues that he did not authorize his attorneys, Edwards and Bennitt, to settle the case on his behalf; that his attorneys coerced him to agree to settle the case; or that Judge Walker coerced him. These contentions are belied by the record.

In some sense, Gray's attorneys' authority is beside the point, because he himself manifested assent to the settlement by signing the handwritten agreement and the long-form release.  However, for the sake of completeness, the court will assess his argument that they lacked authority.

15

"For an attorney to bind his client to a settlement agreement with an opposing party in litigation, the attorney must act with either 'express authority' or 'apparent authority.' See Mid-South Towing Co. v. HarWin, Inc., 733 F.2d 386, 391 (5th Cir. 1984) (federal common law); Alexander v. Burch, 968 So. 2d 992, 996-97 (Ala. 2006) (Alabama law). In settling a lawsuit, an attorney acts with express authority when, based on the statements and conduct of the client, the attorney reasonably believes that he is acting as the client wishes. See Restatement (Third) Of Agency § 2.01. By contrast, an attorney acts with apparent authority when, based on the client's statements and conduct, the opposing party in the litigation reasonably believes that the client has authorized the attorney to settle the lawsuit (regardless of whether the client in fact gave such authorization). See id. § 2.03. Therefore, if a client instructs her attorney to refuse settlement offers, but conducts herself before the opposing party in a manner that indicates

16

the opposite, she is nevertheless bound to a settlement agreement made by her attorney." Jowers v. Ala. Bd. of Pardons & Paroles, 2013 WL 424726, at *2 (M.D. Ala. Feb. 4, 2013) (Thompson, J.), aff'd sub nom. Jowers v. Alabama, 551 F. App'x 525 (11th Cir. 2014).

Here, the evidence reflects that Gray's attorneys had both apparent and express authority to agree to the settlement at the end of the mediation conference before Judge Walker.  There can be no doubt that Edwards and Bennitt acted with apparent authority, for "throughout the entirety of the mediation session, [Gray] did not state to the defendants' representative or counsel that [he] desired not to settle, nor did [his] outward conduct [in their presence] in any other way provide the defendants with any indication of such." Jowers, 2013 WL 424726, at *2.  Indeed, Gray's counsel virtually conceded that at the hearing on his motions that his attorneys had apparent authority.

The court also concludes that Gray's attorneys reasonably believed that he had actually authorized

them to settle the case.  As in <u>Jowers</u>, the evidence reveals that Gray "expressed misgivings," and at one point expressed his desire to end the mediation, but then continued to participate and, in the end, "begrudgingly consented to settlement while wishing circumstances were otherwise."[8]  2013 WL 424726, at *2-*3.

Furthermore, the conduct of his attorneys and Judge Walker was neither coercive nor otherwise improper. Gray's attorneys properly advised him that he was free to accept or reject settlement offers, and gave him ethical advice regarding his potential liabilities in going to trial.  Gray did not inform his attorneys that he felt intimidated or unfree to end the mediation prior to signing the handwritten agreement at the end of the session, and they cannot be expected to have divined his feelings.

---

8. At the hearing, Gray's counsel "agree[d] that he continued" to participate in the mediation process after expressing his desire to leave.  Hr'g Tr. at 118.

At this point, Gray entered into a binding settlement agreement; by the time he first articulated to Edwards that he had felt pressure to settle, he was no longer free to withdraw from the settlement by declining to execute the long-form release. See Fulgence v. J. Ray McDermott & Co., 662 F.2d 1207, 1209 (5th Cir. Dec. 7, 1981) ("If a party to a Title VII suit who has previously authorized a settlement changes his mind when presented with the settlement documents, that party remains bound by the terms of the agreement.").[9]

As for Judge Walker: If she had in fact threatened to hold Gray in contempt unless he settled, that would have been patently inappropriate. But she did no such thing. To the extent that Judge Walker appeared

---

9. Because this case was decided after the Eleventh Circuit's split from the former Fifth Circuit, it is merely persuasive precedent, and not binding on this court. Bonner v. City of Prichard, 661 F.2d 1206 (11th Cir. 1981) (en banc) (adopting as binding precedent all decisions of the former Fifth Circuit handed down prior to the close of business on September 30, 1981).

"stern" or questioned whether Gray was moving productively towards settlement, these actions were entirely appropriate. The function of a mediator is to encourage and facilitate settlement in a reasonable non-coercive manner, see Menaged v. City of Jacksonville, Fla., 2013 WL 461999, at *3 (M.D. Fla. Jan. 14, 2013) (Toomey, M.J.), as Judge Walker did here.

The court finds that Gray knowingly and voluntarily--with a full understanding of his rights and without coercion--entered into the settlement agreement.

### 3.

Third and finally, Gray contends that the City of Dothan has breached the settlement agreement by commenting publicly on it.

As a preliminary matter, the court notes that it is somewhat difficult to evaluate this claim in light of the indefinite evidence as to the content of those

20

comments: Gray did not place in the record the newspaper article at issue, and testified that he was unable to "remember the specifics" and that he did not "want to speculate." What Gray did recall were statements "along [the] lines" of "how they thought that they would have won, but opted--some of them opted to pay it to minimize costs." Hr'g Tr. at 52.

Even assuming that this is competent evidence from which the court could conclude that city commissioners made public statements to this effect, Gray has not demonstrated that they represent a material breach of the settlement agreement entitling him to rescission.

"For there to be a breach of the settlement agreement that is sufficient to discharge a party from her obligations under the contract, and that would allow her to open up the underlying claims for further adjudication, the breach must be 'material.'" Malladi v. Brown, 987 F. Supp. 893, 905 (M.D. Ala. 1997) (Thompson, J.), aff'd sub nom. Malladi v. Gober, 150 F.3d 1197 (11th Cir. 1998). "According to the original

Restatement of Contracts, if the failure of one party to perform part of a contract is so material that it results in the other party not receiving substantially what he bargained for, the duty of the injured party is discharged and he is, thereby, wholly excused from carrying out his undertaking.   <u>See</u> Restatement of Contracts § 274, 397 (1932).   If, on the other hand, the failure to perform is not material, the injured party retains his duty to render his performance.   <u>See</u> <u>id</u>. § 274i(1).   There is still a breach of contract, but the innocent party must recoup his losses, if any, for such an immaterial breach through an action for damages or one of the other procedural devices designed for that purpose." <u>Ferrell v. Sec'y of Def.</u>, 662 F.2d 1179, 1181 (5th Cir. Dec. 7, 1981).

Gray suggests that the commissioners' alleged statements breached the confidentiality provision of the settlement agreement.   That provision prohibits disclosure of the agreement, its contents, and the settlement negotiations, except that the City was

22

permitted to disclose the final settlement amount (and, therefore, the existence of the settlement) in order to obtain approval by the City Commission. Nothing in this provision prohibited the commissioners from commenting publicly on their reasons for settling the case, so long as, in doing so, they did not reveal the contents of the settlement agreement or of the negotiations. Simply stating that they had decided to settle in order to save the City money and not because they believed they would lose the case did not reveal either the contents of either the agreement or the negotiations.[10]

Although Gray did not explicitly argue as much, he could plausibly have contended that the City breached

_____

10. The commissioners' statement that "they thought that they would have won" arguably comes close to revealing one term of the agreement: that the City denied liability. However, the court will not consider this argument, both because Gray has not raised it, and because the commissioners' statement is not necessarily inconsistent with an admission of liability; in theory, if a plaintiff insists on an admission of liability as a condition of settlement, a defendant might make that admission while still believing that it would likely have prevailed at trial.

another provision of the settlement agreement, which prohibits the commissioners from "mak[ing] any disparaging or negative statement, written or verbal, to any third parties relating to Gray, the facts or circumstances surrounding his claims, or this Agreement," when the commissioners allegedly stated "how they thought that they would have won." Confidential Agreement & Release (doc. no. 70-1) at 8.; Hr'g Tr. at 52.

To the extent that this constitutes a negative statement, it could hardly be a milder or more generic one. (Of course, a detailed statement as to why the commissioners believed the City would have prevailed in light of the perceived weaknesses of his claims might have been a much more serious matter.) Moreover, Gray has offered no evidence to show either that the non-disparagement provision was one he bargained for or cared much about--his focus was clearly on monetary compensation (which he obtained) and reinstatement

24

(which he did not)--or that he has suffered any injury as a result of this alleged breach.[11]

### E.

As stated, the court will grant Gray's motion to set aside the judgment and reinstate the case to the extent that the court can adjudicate, as it has now done above, whether the parties have a settlement agreement that should be enforced. However, because the court has now found that an enforceable settlement exists, Gray's motion to reinstate the case will be denied to the extent he seeks to litigate the claims in his complaint, and this case will be dismissed anew in a judgment to follow, on the basis of Gray's stipulation of dismissal.

* * *

---

11. At worst, this was a minor breach, for which Gray could obtain nominal damages (he has not sought damages here); rescission would be wholly inappropriate.

25

It is therefore ORDERED as follows:

(1) Plaintiff Ivan "Keith" Gray's motion to set aside the judgment of dismissal and reinstate this case (doc. no. 73), and his motion amending that motion (doc. no. 74), are granted to the extent that the 'conditional' judgment (doc. no. 68) is set aside and the case reinstated for the limited purpose of adjudicating his challenges to the enforceability of the settlement agreement and denied to the extent that plaintiff Gray seeks to set aside the settlement agreement for any other purpose.

(2) The court declares that the settlement agreement is enforceable.

(3) Plaintiff Gray's motion to clarify (doc. no. 70) is granted to the extent that the foregoing opinion provides the requested clarification.

    (4) Plaintiff Gray's motion for a status update and
        an order to dissolve the confidentiality
        agreement and release (doc. no. 76) is denied.

    (5) An appropriate unconditional judgment
        dismissing this case with prejudice will be
        entered.

    DONE, this the 9th day of August, 2016.

                          ___/s/ Myron H. Thompson___
                          UNITED STATES DISTRICT JUDGE